BALONICK LAW OFFICE, INC.

Barney Balonick (SBN#277776)
429 Santa Monica Blvd #220
Santa Monica, CA 90401
310.310.8149
bhb@balonicklaw.com

Attorneys for Plaintiff
KENT SALVESON

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENT SALVESON, an individual, | CASE NO.: |
| Plaintiff, | COMPLAINT FILED: |
| vs. | |
| EQD CORP., a California corporation, And DOES 1-10, inclusive, | COMPLAINT FOR CONVERSION; ACCOUNT STATED |
| Defendants. | |

Plaintiff KENT SALVESON, ("Salveson" and/or "Plaintiff"), by and through his attorneys, based on experience and investigation and the independent investigation of counsel and information and belief, alleges against Defendant EQD CORP., a California corporation ("EQD and/or Defendant") as follows:

## INTRODUCTION

1. This is a very straightforward case. The Defendant owes the Plaintiff $400,000 – legal fees that spiraled out of control and were never paid stemming from its embattled bankruptcy.

2. The reason *why* the bankruptcy required such legal heavy-lifting is self-evident: the Defendant had only one owner/shareholder and the owner embezzled, misappropriated, and in no uncertain terms, misled creditors and a bank. When the chickens came home to roost, EQD's owner ran to the Plaintiff for a rescue.

3. As is always the case when owners use borrowed corporate funds to finance their personal lifestyle, when the walls close in and the only salvation is bankruptcy, naturally the bankruptcy proceedings take years. The EQD bankruptcy, like most, drew creditors from all walks of life because EQD's owner was personally liable and had some assets.

4. By the time EQD filed its bankruptcy, EQD's owner (Steve Woo) trembled with fear: Woo's friend had personally guaranteed one of EQD's bank debts, and Woo's wife had no idea that their real estate assets were now subject to

foreclosure. Woo's personal use of corporate funds was sure to come to light during the various adversary proceedings filed by EQD Corp.'s creditors.

5. EQD needed an attorney, and the Plaintiff agreed to serve as EQD Corp.'s bankruptcy counsel.

6. One of the most draining parts of the EQD bankruptcy was the adversary action filed by OBM Distribution ("OBM"). OBM went into business with EQD, but OBM quickly realized that Woo embezzled OBM's funds. The fight was over whether or not OBM was obligated to split its inventory with EQD despite the embezzlement. Mr. Salveson prevailed after months and months of legal briefing and court hearings – OBM was ordered to split the inventory with EQD 50-50.

7. Typical of Woo, however, he never allowed EQD to pay for its legal fees because Woo used all of EQD's money to fund his lifestyle which included paying for a mortgage and HOA dues for a condominium in New York.

8. While Mr. Salveson was defeating OBM, however, a different opponent appeared and one far more daunting – Pacific Mercantile Bank ("PMB").

9. Woo, through EQD, borrowed $250,000 from PMB and personally guaranteed the debt. Sadly, since PMB did not trust Woo, it required an additional guarantor – Sung Yi.

10. The PMB loan funded but within less than six weeks, Woo used EQD's PMB bank loan for his own personal gain and breached the PMB note.

11. PMB was not going to sit idly by and write off the debt. Woo ran to the Plaintiff to have EQD file bankruptcy – this only enraged PMB but upon information and belief, this is what precipitated the EQD bankruptcy. Woo knew that he was personally liable for the PMB debt, and he knew that Sung Yi was also on the hook for the $250,000. PMB pursued Woo and Yi personally for its $250,000 loan.

12. Not surprisingly, since Woo has an unjustified sense of self-worth, he spent all his money as if he was entitled to live a certain lifestyle (despite that he could only do so by using borrowed money) and could not raise the funds to stave off the PMB fight.

13. If Woo failed to act fast, he would lose his real estate, and Sung Yi would pursue Woo personally. Therefore, EQD used every tactic possible to stall the barbarians at the gate and used Mr. Salveson to maintain an even strain with EQD's creditors. Woo caused EQD to settle with PMB.

14. EQD drove up a legal fee bill of $400,000 but to this day only certain facts remain clear: EQD is defunct entity, but Woo admits that the Plaintiff is owed $400,000,00.

15. This Case is simple – Mr. Salveson spent hundreds if not thousands of billable hours helping EQD while its owner spent EQD's money on himself.

16. EQD owes Mr. Salve son $400,000.00.

## PARTIES

17. Plaintiff is, and at all times relevant hereto an individual who is a licensed attorney in the State of California. The Plaintiff is domiciled in Tennessee.

18. Defendant EQD, a California corporation, is a suspended entity by the California Franchise Tax Board and therefore lacks the capacity to defend this Action. Cal. Corp. Code § 2205.

## JURISDICTION AND VENUE

19. This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship, and the Defendant owes the Plaintiff more than $400,0000.00. Clearly, there is more than $75,000.00 in controversy. This Court has personal jurisdiction over the Defendant and venue in this jurisdiction is proper pursuant to Rule 4 of the Federal Rules of Civil Procedure because: (1) the Plaintiff is domiciled in Tennessee, but the Defendant is a California corporation. As further evidenced in this Complaint, the Defendant has not only conducted business here as a California corporation but has also availed itself of the California judicial system – EQD Corp. bankruptcy – 8:14-bk-15778. Starting in or around 2014 through 2017, the Plaintiff was the Defendant's bankruptcy counsel. At all relevant times herein, the aforementioned acts by the Defendant occurred from 2014 through 2021. The principal place of business of the

Defendant is located in the County of Orange, and State of California; (2) the Defendant transacted and conducted business in the City of Newport Beach, County of Orange, and should have expected to have been sued here as it used Mr. Salveson's legal services but never paid for them; (3) Defendant's conduct and acts giving rise to this action occurred and has occurred in the City of Newport Beach, County of Orange; and/or (4) the Defendant should have expected to be subject to the jurisdiction of the California courts wherein it admits, through its owner, that it owes Mr. Salveson $400,000. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1331 (b)(2) as a substantial part of the events or omissions giving rise to the action occurred in this judicial district.

## FACTUAL ALLEGATIONS

20. In 2014, EQD filed a chapter 11 bankruptcy which was eventually converted to a chapter 7 (8:14-bk-15778).

21. PMB in 2014 filed its breach of written guaranty against Woo and Yi once EQD filed its bankruptcy case (30-2014-00762327) and EQD was able to bring PMB's state court case into the EQD bankruptcy.

22. During this same time, OBM filed its adversary action against PMB and while it lost on the issue of joint venture, it was successful in its proof of claim in the amount of $306,029.90 [Dkt #362].

23. The PMB debt was resolved. Woo and Yi jointly and severally agreed to pay PMB $321,000 and PBM also secured Woo's real estate in the event PMB did not receive full payment of $321,000.00.

24. Mr. Salveson negotiated the PMB settlement which was at all times to benefit EQD because PMB was poised to attack EQD in the bankruptcy.

25. Concurrently, Mr. Salveson contested OBM's position and after at least 2 years, was able to force OBM to walk away with only ½ of the inventory OBM was claiming it owned. During EQD's bankruptcy, Mr. Salveson never represented Woo because it was a conflict – attorneys for corporations that are in bankruptcy are not permitted to represent the individual owners.

26. EQD never paid Mr. Salveson for his services despite the fact that its owner *eventually* admitted that Mr. Salveson was indeed owed $400,000 (8:21-bk-10768) [Dkt #1, p. 28].

## COUNT I – CONVERSION
### (Against Defendant EQD Corp.)

31. Plaintiff re-adopts and re-alleges Paragraphs 1-27 as though fully set forth herein.

32. At all relevant times herein, the Plaintiff owns the right to possess his funds which EQD not only never paid, but the owner, Woo, admitted that Mr. Salveson was owed $400,000. Upon information and belief, Woo caused EQD to not have

the ability to pay for its legal fees by spending EQD's funds. EQD owed Mr. Salveson the $400,000 in unpaid legal fees, never Woo.

33. EQD converted the funds that it did have to pay Mr. Salveson – EQD, through Woo, used corporate funds to pay for its owner's lifestyle.

34. The Plaintiff has been damaged by, at least, $400,000 for EQD's refusal to pay for Mr. Salveson's legal fees.

## COUNT II – ACCOUNT STATED
### (Against Defendant EQD CORP.)

35. Plaintiff re-adopts and re-alleges Paragraphs 1-34 as though fully set forth herein.

36. EQD had an agreement with the Plaintiff to pay for the Plaintiff's legal fees.

37. Mr. Salveson does not need to prove that EQD owes $400,000, its owner admitted as much in his own personal bankruptcy but at all times herein, EQD's owner never retained Mr. Salveson personally and the admission in his own bankruptcy is a tacit admission that there is a new agreement that EQD owes Mr. Salveson $400,000.00.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, KENT SALVESON, prays for judgment as follows:

PURSUANT TO COUNT I – CONVERSION

1. Defendant, its officers, agents, servants, representatives, employees, attorneys, parents, subsidiaries, related companies, partners, successors, predecessors, assigns, distributors, and all persons acting for, with, by, through or under them, and each of them, be required to pay actual damages in amounts no less than $400,000.00.

2. Defendants be required to pay actual damages increased to the maximum extent permitted by law and/or statutory damages at Plaintiff's election;

3. Defendant be required to pay for punitive damages of at least $100,000.00, and for all other permissible fees of recovery.

4. For such other and further relief as is just and proper.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, KENT SALVESON, prays for judgment as follows:

PURSUANT TO COUNT II – ACCOUNT STATED

1. Defendant, its officers, agents, servants, representatives, employees, attorneys, parents, subsidiaries, related companies, partners, successors, predecessors,

assigns, distributors, and all persons acting for, with, by, through or under them, and each of them, be required to pay actual damages in amounts no less than $400,000.00.

2. Defendants be required to pay actual damages increased to the maximum extent permitted by law and/or statutory damages at Plaintiff's election;

3. Defendant be required to pay for punitive damages of at least $100,000.00, and for all other permissible fees of recovery.

4. For such other and further relief as is just and proper.

DATED: September 13, 2023  By: *BARNEY BALONICK*

                                            BALONICK LAW OFFICE, INC.
                                            Attorneys for Plaintiff